The Memorandum Decision below is hereby signed.
Dated: March 29, 2007.



/s/ S. Martin Teel, Jr.
_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MAGALI BARBARAN, | ) | Case No. 06-00457 |
| | ) | (Chapter 13) |
| Debtor. | ) | |
| | ) | **For Publication in West** |
| | ) | **Bankruptcy Reporter.** |

MEMORANDUM DECISION REGARDING TRUSTEE'S
<u>MOTION TO DISMISS BASED ON 11 U.S.C. § 109(h) INELIGIBILITY</u>

Under 11 U.S.C. § 109(h), a provision added to the Bankruptcy Code (11 U.S.C.) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005), an individual debtor, with exceptions of no relevance here, must obtain a credit counseling agency briefing "during the 180-day period preceding the date of filing of the petition by such individual" in order to be eligible to be a debtor. The debtor in this case obtained such a briefing on the day of, but prior to the time of, the filing of the petition that commenced this bankruptcy case. In <u>In re Mills</u>, 341 B.R. 106 (Bankr. D.D.C. 2006), I interpreted § 109(h) as requiring the debtor to obtain the required briefing no later than the day

before the filing of the debtor's bankruptcy petition.  Based on <u>Mills</u>, the chapter 13 trustee has moved for dismissal of the case.  The debtor has responded by asking the court to reconsider <u>Mills</u> in light of arguments that were not advanced in <u>Mills</u>, and in light of case law that has developed since <u>Mills</u> was decided.  I will deny the trustee's motion to dismiss because I am now convinced that in § 109(h), Congress failed to accord the term "date" (in the clause "date of filing of the petition") its usual meaning of calendar day, and instead intended "date" to mean the moment of the filing of the petition.

I

In deciding <u>Mills</u>, I looked to state court decisions holding that "'when a statute requires an act to be done within a specified number of days prior to a fixed date, the last day, namely, the fixed date, is to be excluded . . . in making the calculation.'"  <u>In re Mills</u>, 341 B.R. at 107 (quoting <u>State v. Zaller</u>, 142 Ohio St. 186, 50 N.E.2d 991, 991-92 (1943)); <u>see also</u> <u>Stein Steel & Supply Co. v. Tate</u>, 94 Ga. App. 517, 95 S.E.2d 437, 438-39 (1956) (cited in <u>In re Mills</u>, 341 B.R. at 107); <u>Baugh v. Rural High Sch. Dist. No. 5</u>, 185 Kan. 123, 340 P.2d 891, 898 (1959) (same); <u>Murchison v. Darden</u>, 171 S.W.2d 220, 221 (Tex. Civ. App. 1943) (same).  However, the first three decisions I cited dealt with fixing the starting calendar day of the statutory period, and not with whether the act can be done on the

fixed date.  The other decision I cited dealt with a statute that required that absentee ballots be cast not less than three days prior to the date of the election (and hence obviously not on the date of the election).  Section 109(h) does not purport to place a minimum number of days before the "date of filing of the petition" within which a credit counseling agency briefing must be obtained.  In contrast, 11 U.S.C. § 1308(a) (also enacted by BAPCPA) does impose such a minimum (of "[n]ot later than the day before the date on which the meeting of the creditors is first scheduled to be held") with respect to the filing of tax returns.  Accordingly, the cited decisions do not bear *directly* on the proper interpretation of § 109(h) in the case of a briefing conducted on the date of the filing of the petition.

    Nevertheless, these cases do bear *indirectly* on that issue because they suggest that § 109(h) should be read as excluding the date of filing of the petition in interpreting § 109(h). Consider a debtor who files a petition at 2:00 p.m. on the 181st day of a calendar year, and obtained a briefing at 9:00 a.m. on the first day of the calendar year.  Would that debtor be eligible to file a bankruptcy petition?  If the term "date" in § 109(h) is interpreted as "calendar day," the answer would be yes, as she would have obtained a briefing within 180 days prior to the calendar day on which she filed her petition.  If the term "date" in § 109(h) is interpreted as the moment of the filing of

the petition, and if a day is any 24-hour period, the answer would arguably be no, as 180 days prior to the moment of the filing of the petition would be at 2:00 p.m. on the first day of the year.

That would be an odd result.  However, the state court decisions I cited in Mills employ a convention of statutory interpretation under which the term "day" in § 109(h) would mean a full calendar day when the issue is counting backwards to fix the date that is 180 days prior to the date of the filing of the petition.  It is thus possible, on the one hand, to read the term "date" in § 109(h) to mean the moment of the filing, while, on the other hand, to read the term "180 days" as consisting of only full calendar days in calculating the start of the 180-day period preceding that moment of filing.  Under this approach, a briefing obtained 180 calendar days beforehand would satisfy the § 109(h) eligibility requirement even if the briefing were at an earlier time of day than the time of day of the filing of the petition 180 calendar days later.  In contrast, when it comes to fixing the latest point in time to act, the convention of disregarding the part of the statutory time frame that is not a full calendar day would not apply, and the required briefing would be timely if obtained on the day of, but prior to, the filing of the petition.

Accordingly, I agree with the subsequent decision in In re Hudson, 352 B.R. 391 (Bankr. D. Md. 2006), that the issue is not the measurement of the 180-day period in § 109(h) (that is, the fixing of the earliest day on which a credit counseling agency briefing can be obtained and still satisfy the § 109(h) eligibility requirement), see id. at 395, and respectfully disagree with In re Cole, 347 B.R. 70 (Bankr. E.D. Tenn. 2006), which followed Mills and placed emphasis on decisions dealing with the measurement of the length of a statutory period for accomplishing an act.

II

When a contract contains a provision using a term that has a usual meaning, and the provision itself indicates no reason not to follow that meaning, a court nevertheless will interpret the term differently if it is accorded an eccentric or unusual meaning elsewhere in the contract.  The same approach applies to statutory interpretation.  I agree with Hudson, 352 B.R. at 393, and In re Moore, 2006 WL 3692640 (Bankr. E.D. Tenn. 2006), that the term "date" in § 109(h) must be interpreted in light of the use of the term "date" elsewhere in the Bankruptcy Code.

For reasons discussed in Moore, the term "date" in several provisions of the Bankruptcy Code must have been used to mean the precise moment of the filing of the bankruptcy case, otherwise absurd results, contrary to the congressional purpose of the

5

provisions, would ensue.  <u>Moore</u>, 2006 WL 3692640 at *5-6 (discussing 11 U.S.C. §§ 522(p), 1307(c)(11),[1] 1308(b)(1), 1325(a) (the "hanging paragraph" at the end thereof), and 1325(a)(8)).  All of these provisions were added to the Bankruptcy Code by the same statute, BAPCPA, that added § 109(h) to the Bankruptcy Code, thus strengthening the propriety of relying on them in interpreting § 109(h).

The court in <u>Hudson</u> engaged in a similar survey of the Bankruptcy Code to reach the conclusion that the term "date" in § 109(h) does not necessarily refer to a calendar day.  Among other provisions, the court identified § 348(f)(1)(A) as a pre-BAPCPA provision that uses "date" to mean a precise moment in time instead of a calendar day.  352 B.R. at 393.  Although

---

[1] The provision was correctly quoted in <u>Moore</u>, but was mis-cited as § 1307(c)(1).

6

§ 348(f)(1)(A) is arguably equivocal on that point,[2] the use of the term "date" in § 348(f)(2) makes clear that the term "date" is used in both instances in § 348(f) to mean a precise moment in time, and not a calendar day.[3]

---

[2] Under § 348(f)(1)(A), property of the estate in a case converted from chapter 13 generally consists of "property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." When a case is a case under a chapter other than chapter 13, the provisions of chapter 13 do not apply to that chapter. 11 U.S.C. § 103(i). Consequently, the reference to "property of the estate, as of the date of the filing of the petition" could be read to mean property of the estate as determined without reference to chapter 13 of the Bankruptcy Code. Under this meaning, the term would refer to property of the estate as fixed by § 541, and would not include property added to property of the estate under § 1306(a).

Because § 541(a) generally limits property of the estate to the debtor's interests in property as of the commencement of a case (that is, as of the filing of the petition), property of the estate, with exceptions of no relevance here, would not include property acquired postpetition on the date of the petition. In that event, § 348(f)(1)(A) would not shed any light on the meaning of the term "date" because § 541 (with exceptions of no relevance) already restricts the property of the estate to the debtor's property as of the commencement of the case, which occurs at the moment of the filing of the petition.

[3] Section 348(f)(2) provides that if the debtor converts her case from chapter 13 in bad faith, the property of the estate in the converted case "shall consist of the property of the estate as of the date of conversion," obviously referring to property of the estate that had become property of the estate pursuant to § 1306 as well as property that is property of the estate under § 541. If the term "date of conversion" is taken to mean calendar day, as though the conversion is not effective until the end of the day, then property that the debtor obtains after the moment of the debtor's filing his notice of conversion would be included in the property of the estate by reason of § 1306 when § 348(f)(2) applies. It is therefore likely that Congress intended "date" in § 348(f)(2) to mean the precise moment of conversion.

7

To be sure, there is at least one instance in the Bankruptcy Code where Congress clearly uses the phrase "before the date of the filing of the petition" in the ordinary sense of "before the calendar day of the filing of the petition." Under 11 U.S.C. § 547(b)(4)(A), a transfer of property of the debtor generally cannot be avoided as a preference unless it was made "on or within 90 days before the date of the filing of the petition." As discussed below, Congress recognized in § 547(b)(4)(A) the distinction between transfers occurring *on* the day of the filing of the petition versus those occurring *before* the day of the filing of the petition, and used "date" in § 547(b)(4)(A) to mean

the day of the filing of the petition.[4]

Nevertheless, the fact that Congress expressed in almost flawless terms an intention that day-of-filing acts be covered by § 547(b)(4)(A) does not mean that the court should assume that Congress will flawlessly express its intention in unambiguous terms *everywhere* in the Bankruptcy Code.  As demonstrated by the courts in Moore and Hudson, Congress has used the phrase "before

---

[4] The word "date" in the clause of § 547(b)(4)(A) reading "within 90 days before the date of the filing of the petition" must mean "calendar day," not "the moment of the filing of the petition" because "on the moment of the filing of the petition" would make no sense.  Instead, "on . . . the date of the filing of the petition" must mean "on the day of the filing of the petition."  This latter interpretation makes sense because it allows the trustee to recover transfers made on the same day as (but before the moment of) the filing of the petition.
    The court in Hudson reached the opposite conclusion with respect to this provision, reasoning that the term "date" in § 547(b)(4)(A) must refer to a specific moment in time because otherwise transfers made on the same calendar day as the filing of the petition but after the moment of the filing would fall under the rubric of § 547.  352 B.R. at 393-94.  But any property held by the debtor becomes property of the estate under § 541 as soon as the petition is filed.  Such property, if conveyed by the debtor after the moment of the filing of the petition, would not constitute a conveyance of property of the debtor, but would instead constitute a postpetition transfer subject to 11 U.S.C. § 549.  Thus, it was unnecessary to specify in § 547(b)(4)(A) that, to qualify as a preference, a transfer on the day of the filing of the petition must occur before the moment of the filing of the petition.
    Nevertheless, it must be conceded that my reading of § 547(b)(4)(A) does not provide a completely satisfactory answer to the extreme hypothetical of a debtor who obtains property after filing the petition and transfers that property to a creditor on the same date.  But for reasons that need not be explored here, § 547 can be interpreted as being inapplicable to such transfers without the necessity of interpreting the term "date" in § 547(b)(4)(A) to mean the moment of the filing.

the date of filing of the petition" to refer to the moment when the petition is filed, not the calendar day of the filing. Moreover, even references in the Bankruptcy Code to the phrase "before the date of filing of the petition" that refer to a calendar date, such as the reference in § 547(b)(4)(A), are interpreted in that manner because it makes sense to do so. Section 109(h) would stand out like a sore thumb were it to be interpreted as imposing a one-day waiting requirement for no reason whatsoever.

It could also be argued that Congress would have used a more precise phrase than "before the date of the filing of the petition" if it had intended to allow debtors to obtain credit counseling on the same calendar day that they filed their petitions.  For example, the Bankruptcy Code refers in various sections of the Bankruptcy Code to the "commencement of the case," which plainly means the moment of the filing of the bankruptcy petition. See, e.g., 11 U.S.C. §§ 101(7) ("claim that arose before the commencement of the case"); 341(e) (addressing plan acceptances solicited "prior to the commencement of the case"); 362(a)(6) (staying enforcement of claim "that arose before the commencement of the case"); and 541(a) (defining property of the estate).[5]  One must wonder why Congress could not

---

[5] Other examples of precise references in the Bankruptcy Code to an exact moment in time abound. See, e.g., 11 U.S.C. § 101(10) (defining "creditor" as including an entity "that has a

10

have used the same terminology in § 109(h) to denote the moment of the filing of the petition in lieu of the ambiguous term "date of filing of the petition."

But as I have already noted, the precision with which Congress expresses itself in some sections of the Bankruptcy Code is missing in others. Even the term "commencement of the case" has been joined with the potentially ambiguous term "date" in at least one provision of the Bankruptcy Code in a manner that makes an otherwise straightforward provision unclear. See 11 U.S.C. § 503(b)(9).[6] This serves to illustrate that the term "date" often is, indeed, used to mean an exact moment in time, and that Congress, being composed of representatives of the various states rather than the bankruptcy bar, occasionally lapses into imprecise language that must be read with a view towards the overall workings of the Bankruptcy Code and a good dose of common sense. In that respect, my decision in Mills could justly be seen as myopic.

---

claim against the debtor that arose at the time of or before the order for relief").

[6] Section 503(b)(9) uses the term "before the date of commencement of a case" in according administrative priority to claims for "the value of any goods received by the debtor within 20 days before the date of commencement of a case." It would be absurd if goods received prepetition on the day of the filing of the petition would not give rise to an administrative claim but they would if received the preceding day. Thus, as in § 109(h), it is doubtful that Congress intended to use the term "date" in §503(b)(9) to mean the calendar day instead of the precise moment of the specified event.

                                III

I was not persuaded in <u>Mills</u> that the usual meaning of "date" should be discarded simply to achieve what one might think was good bankruptcy policy (<u>i.e.</u>, not imposing a burden on debtors of having to wait until the day after obtaining the credit counseling agency briefing to file their petitions), and I remain convinced that it is the duty of this court to look at statutes as they are written and not how individual judges might wish they were written.  But after further study, I have come to realize that the term "date" is used elsewhere in the Bankruptcy Code in the non-ordinary sense of an exact moment in time, and this requires a choice between two conflicting meanings.  Nothing in § 109(h) or its legislative history suggests that Congress intended the term "date" in § 109(h) to refer to a calendar day, and frankly it would be odd for Congress to require a debtor to obtain credit counseling on the calendar day before the filing of the debtor's petition without at least giving some hint that it intended to create such a requirement.  Indeed, as has already been observed, when, in enacting BAPCPA, Congress intended an act to take place prior to the calendar date of an event, it knew how to express that purpose.  <u>See</u> 11 U.S.C. § 1308(a) (fixing a deadline for filing tax returns of "[n]ot later than the day before the date on which the meeting of creditors is first scheduled to be held").

For all these reasons, I conclude that in § 109(h), Congress used the term "date" to refer to the moment of the filing of the petition, as it is used in various other provisions of the Bankruptcy Code, not as a trap to prevent unwary (and otherwise qualified debtors) from obtaining title 11 relief.  My contrary holding on this specific point in <u>Mills</u> should no longer be followed in this district unless and until ordered otherwise by a court of appellate review.  In accordance with the foregoing, an order denying the trustee's motion to dismiss has been signed.

                              [Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Cynthia A. Niklas, Chapter 13 Trustee; Office of United States Trustee.